IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEBRA A. RUM                :

                          :

   v.                      :   Civil Action No. DKC 12-0366

                          :

DARCARS OF NEW CARROLLTON, INC.
                          :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the "motion to dismiss or, in the alternative, to stay action pending arbitration" filed by Defendant DARCARS of New Carrollton, Inc. ("DARCARS"). (ECF No. 4). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I.   Background**

**A.   Factual Background**

Plaintiff Debra A. Rum alleges the following facts in the amended complaint. Ms. Rum is over forty-years old and is a woman. In March 2003, she was hired as an assistant service manager/service advisor at DARCARS's automobile dealership located in New Carrollton, Maryland. For the dealership to maintain "high star status" with the manufacturer, Ms. Rum maintained certification as a service manager/service advisor. (ECF No. 2 ¶ 9). On top of a base salary, she received

commissions, which were earned based on individual labor and part sales, as well as a percentage of the total labor sales for the service department.

In the fall of 2008, DARCARS hired two men — both of whom were younger than Ms. Rum — as assistant service managers/service advisors. Neither man had prior dealership experience or was certified as a service manager/service advisor. In November of that year, Ms. Rum learned that the two men were paid a higher base salary and earned commissions at a higher rate than she did. Ms. Rum complained to her direct supervisor about this pay differential. She followed up about her complaint on a weekly basis with other management personnel, but she was told repeatedly that "the matter was under review." (*Id.* ¶ 14). In January 2009, Ms. Rum informed management that she was being discriminated against and that she was being subjected to a hostile work environment. About two weeks later, DARCARS retroactively paid Ms. Rum the difference between the base salaries and the commission rates back to the time the two male employees began their employment.

On January 19, 2010, three managers held a meeting with Ms. Rum at which they informed her that a customer, whom they did not identify, had accused her of "offering to repair the customer's vehicle for cash on the side." (*Id.* ¶ 18). The managers demanded that Ms. Rum provide the names of all

individuals involved in this violation of DARCARS's policy regarding vehicle repairs.   Ms. Rum repeatedly denied the allegations, but one of the managers used "an aggressive and intimidating tone" with her.   (*Id.* ¶ 19).[1]  She ultimately stated that she had her personal vehicles repaired at the dealership. These repairs were in compliance with DARCARS's policy regarding such repairs.   Nevertheless, as a result of the meeting, Ms. Rum was placed on administrative leave.   Two days later, she was terminated for having her personal vehicles repaired at the dealership.   The managers met with other employees to inform them that Ms. Rum would not be working there anymore.

Ms. Rum has been unable to obtain comparable employment since her termination, in part, because DARCARS told other dealerships that she was terminated for violation of its policies and practices.

**B.   Procedural Background**

On December 22, 2011, Ms. Rum filed a complaint against DARCARS in the Circuit Court for Prince George's County, Maryland.   One week later, she amended the complaint.   After service, DARCARS timely removed to this court on the basis of federal question jurisdiction.   (ECF No. 1).   The amended complaint contains seven counts:   (1) intentional infliction of

---

[1]  DARCARS did not follow up with any male mechanics regarding the alleged vehicle repair side business.

emotional distress, (2) disparate treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Equal Pay Act, (3) retaliation in violation of the same federal statutes, (4) violation of Prince George's County Code Division 12, Subdivision 7, (5) vicarious liability, (6) negligence, and (7) breach of contract.

On February 6, 2012, DARCARS filed the pending motion. (ECF No. 4).  Although DARCARS styles its motion as a "motion to dismiss or, in the alternative, to stay action pending arbitration," it is, in effect, a motion to compel arbitration. Ms. Rum filed opposition papers on February 29, 2012.  (ECF No. 9).  DARCARS replied on March 19, 2012.  (ECF No. 10).

## II. Applicability of the Federal Arbitration Act ("FAA")

DARCARS and Ms. Rum disagree whether the FAA applies to the employment contract between the parties ("the Agreement").  The FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  As defined in the FAA, the term commerce

> means commerce among the several States or
> with foreign nations, or in any Territory of
> the United States or in the District of
> Columbia, or between any such Territory and
> another, or between any such Territory and
> any State or foreign nation, or between the
> District of Columbia and any State or
> Territory or foreign nation, but nothing
> herein contained shall apply to contracts of
> employment of seamen, railroad employees, or
> any other class of workers engaged in
> foreign or interstate commerce.

9 U.S.C. § 1.  Therefore, "[b]efore the [FAA] becomes applicable

[to an arbitration agreement], two findings must be made:  (1)

there was an agreement in writing providing for arbitration and

(2) the contract evidences a transaction involving interstate

commerce." *Am. Home Assurance Co. v. Vecco Concrete Constr. Co.

of Va.*, 629 F.2d 961, 963 (4th Cir. 1980).[2]

     As to the first prong, DARCARS attached to its motion a

copy of the Agreement.  (ECF No. 4-1).[3]  Ms. Rum does not dispute

---------------------------------------

[2] The United States Supreme Court has explained that for a
contract to "evidenc[e] a transaction involving [interstate]
commerce" as required by the FAA, the transaction need only have
involved interstate commerce "in fact."  *See Allied-Bruce
Terminix Cos. v. Dobson*, 513 U.S. 265, 277-78 (1995).  The
contract need not have "contemplated" interstate activity.  *Id.*
Thus, the Court rejected the notion that a contract evidences a
transaction involving interstate commerce only when there is an
explicit "reference to interstate commerce in the document."
*See id.* at 278.

[3] The Agreement, which Ms. Rum signed on March 16, 2004,
states that she is an at-will employee.  (ECF No. 4-1).  With

the authenticity of the Agreement or that the Agreement provides

_____

respect to arbitration and incorporation, it reads, in pertinent part:

> Except for exclusively monetary claims of less tha[n] $5000, any dispute or controversy (including the question of whether the dispute or controversy is subject to arbitration) which would otherwise require or allow res[or]t to any court or other governmental dispu[t]e resolution forum, between the employee and the company (or its owners, employees, agents, directors, and officers, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with law, equity, or otherwise, specifically including but not limited to any and all matters arising under the constitution of the United States or of any state, . . . Title VII of the Civil Rights Act of 1964, . . . the Equal Pay Act, . . . similar state and local status regulations, and ordinances, as well as any other federal, state, or local personal injury, civil rights, or employment related law, regulations, rules or theories (except for worker's compensation claims which shall not be subject to these procedures) shall be submitted to, and determined by, binding arbitration under the Federal Arbitration Act . . . .
>
> This is the exclusive procedure for remedy for any dispute or controversy covered. This is the entire understanding between the Company and employee reg[]ardin[g] employment and reasons for termination of employment. There is no contract concerning employment between the Company and the Employee.

(*Id.*).

for arbitration.   As to the second prong, however, Ms. Rum challenges the Agreement's relationship to interstate commerce. (*See* ECF No. 9-1, at 2-3).   Regarding the burden of proving this second prong, the United States Court of Appeals for the Fourth Circuit has held that the FAA

> does not require proof by affidavit or other
> specific evidence of the nexus to interstate
> commerce.   Where . . . the party seeking
> arbitration alleges that the transaction is
> within the scope of the Act, and the party
> opposing application of the Act does not
> come forward with evidence to rebut
> jurisdiction under the federal statute, we
> do not read into the Act a requirement of
> further proof by the party invoking the
> federal law.

*Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 n.4 (4th Cir. 1985); *see also Jih v. Long & Foster Real Estate, Inc.*, 800 F.Supp. 312, 316 (D.Md. 1992) ("[O]nce one party asserts that the transaction is within the scope of the Act, the burden is upon the other party to come forward with evidence to rebut jurisdiction under the federal statute." (citing *Maxum Founds., Inc.*, 779 F.2d at 978 n.4)).

Here, DARCARS's motion clearly asserts that the FAA applies to the Agreement.   Not only does the motion explicitly reference the FAA (ECF No. 4 ¶ 5), it also refers to and attaches the Agreement, which by its own terms states that "any dispute or controversy . . . shall by submitted to, and determined by, binding arbitration under the *Federal Arbitration Act*" (ECF No.

4-1) (emphasis added).  The burden is thus on Ms. Rum to proffer evidence to rebut the Agreement's connection to interstate commerce.

Ms. Rum's amended complaint contains claims under three federal statutes, including Title VII and the ADEA, which only apply to an employer engaged in commerce.  *See* 42 U.S.C. § 2000e(b), (g), (h) (Title VII); 29 U.S.C. § 630(b), (g), (h) (ADEA).  The third, the Equal Pay Act, applies to employees engaged in commerce.  *See* 29 U.S.C. §§ 203, 206(d).  By asserting those claims, then, Ms. Rum in effect concedes the interstate nexus for her employment.  The amended complaint also alleges that her compensation depended in part on commissions based on her own labor and part sales, as well as a percentage of the total labor sales for the service department.  Her affidavit establishes at most that she is a resident of Maryland and that she was employed and signed relevant documents only in Maryland.  (ECF No. 9-2 ¶¶ 2-3).  She does not state that her actual job responsibilities were confined to intrastate activities nor does she prove that her employment at DARCARS's was limited to the state's borders.

In its reply, DARCARS further alleges the following:

> DARCARS is in the business of selling and servicing automobiles, a good that travels and "flows" through interstate commerce. DARCARS sells vehicles and parts to customers from multiple states and the

8

> District of Columbia.  [Ms.] Rum was hired
> as an Assistant Service Manager/Service
> Advisor for DARCARS.  [Ms.] Rum's
> compensation for her employment was based on
> labor sales and part[7] sales — services which
> were provided to customers, from multiple
> states, for automobiles that travel in
> interstate commerce.
>
> _____
> [7] Car parts are manufactured and shipped from
> throughout the United States.  Furthermore,
> the cars sold at DARCARS are not
> manufactured here in Maryland, but in
> several other states and countries, and then
> shipped to Maryland for sale.

(ECF No. 10, at 6).  Ms. Rum does not challenge these additional

allegations, which she could have done via surreply.  *See* Local

Rule 105.2.a (permitting surreply after obtaining leave of the

court).

    This record, then, shows that DARCARS has established that

the Agreement evidences a transaction involving interstate

commerce.  This finding is not inconsistent with the general

principle that, "[e]mployment contracts, except for those

covering workers engaged in transportation, are covered by the

FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2001);

*see also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 369 (4th

Cir. 2012) ("'[A] contract evidencing a transaction involving

commerce' includes an employment contract." (quoting *Circuit

City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001)).  Although

the issue of the applicability of the FAA to an employment

contract was not specifically challenged as it is here, the FAA

9

has been repeatedly applied to employment contracts in this
circuit. *See, e.g.*, *Am. Gen. Life & Accident Ins. Co. v. Wood*,
429 F.3d 83, 87 (4th Cir. 2005); *Murray v. United Food &
Commercial Workers Int'l Union, Local 400*, 289 F.3d 297, 301 (4th
Cir. 2002); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 936-
37 (4th Cir. 1999).

## III. Consideration

Ms. Rum also contends that the agreement is not enforceable
due to a failure of consideration. In deciding a motion to
compel arbitration, district courts must "engage in a limited
review to ensure that the dispute is arbitrable — i.e., that a
valid agreement to arbitrate exists between the parties and that
the specific dispute falls within the substantive scope of that
agreement." *Hooters of Am., Inc.*, 173 F.3d at 938 (internal
quotation marks omitted). In so doing, courts apply "ordinary
state-law principles that govern the formation of contracts."
*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Maryland contract law, a legally binding agreement
must be supported by sufficient consideration. *Cheek v. United
Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 147 (2003). A
promise may become consideration for another promise only when
it constitutes a binding obligation. *Id.* at 148. When a
promise is composed of words in a promissory form that do not
actually bind or obligate the promisor to do anything, the

promise is said to be "illusory" and does not constitute
consideration. *Id.* at 148–49.

Ms. Rum argues that the Agreement lacked consideration and
was illusory. (*See* ECF No. 9-1, at 4). Citing *Cheek*, she
contends that an "arbitration agreement [is] illusory [if] the
employer reserve[s] the right to rescind, to alter or amend the
arbitration agreement in its employee's handbook." (*Id.*). She
states that

> despite the language of the alleged
> arbitration agreement between the parties,
> [she] does not know whether the employee
> packet she was provided, which contained an
> employee handbook, at the time she was hired
> contained additional information related to
> any policies [DARCARS] had with respect to
> arbitration beyond the alleged arbitration
> agreement.

(*Id.*). As a result, Ms. Rum argues that she needs discovery in
part to ascertain the validity of the arbitration agreement.
(*Id.* at 5).

Ms. Rum misconstrues the holding in *Cheek*, however, as the
Court of Appeals of Maryland did not reach such a broad
conclusion. In *Cheek*, the plaintiff received a copy of the
defendant-employer's handbook on his first day of work and
signed an acknowledgment form indicating that he had
"'specifically received and reviewed,' among other things, an
'Internal Dispute Resolution/Employment Arbitration Policy'"
summarized in the handbook, and that he "agree[d] to submit all

employment-related disputes . . . to arbitration under [the employer's] policy." 378 Md. at 143.   The arbitration policy itself gave the employer the right to "alter, amend, modify, or revoke the [policy] at its sole and absolute discretion at any time with or without notice." *Id.* at 142–43.   The Court of Appeals observed that "the plain and unambiguous language of [this] clause" allowed the employer "to revoke the Employment Arbitration Policy even after arbitration is invoked, and even after a decision is rendered, because [the employer] can 'revoke' the Policy 'at any time.'" *Id.* at 149.   Under those circumstances, the court determined, the employer's "'promise' to arbitrate employment disputes is entirely illusory, and therefore, no real promise at all." *Id.*

Thus, in *Cheek*, while the arbitration policy at issue was contained in the employee handbook itself, the court did not hold that there is anything special about an employee handbook requiring a separate review of that document to see whether an arbitration agreement is illusory.   In fact, *Cheek* stands for precisely the opposite conclusion:   rather than look at outside documents, such as an employee handbook, the court must limit its search for supporting consideration to the four corners of the Agreement itself.   As the Fourth Circuit explained:

> [T]he reservation of rights in *Cheek* was *contained* in the arbitration policy. Looking   at   the   *four*   *corners*   of   the

> arbitration policy in *Cheek*, the court
> understandably concluded that the policy
> contained an illusory promise. In the
> instant case, by contrast, looking at the
> four corners of the separate Arbitration
> Agreement, the agreement contains no such
> illusory promise. To be sure, it is only
> when we are asked to look beyond the four
> corners of the Arbitration Agreement . . . —
> something *Cheek* tells us we are not allowed
> to do — that [the plaintiff's] argument
> finds its support.
>
> In sum, the district court simply was
> not at liberty to go beyond the language of
> the Arbitration Agreement in determining
> whether the agreement contained an illusory
> promise. When one examines the language of
> the Arbitration Agreement itself, only one
> conclusion is tenable — the agreement is
> binding and enforceable.

*Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 (4th Cir. 2005)

(internal citation omitted).

In this case as well, the search for supporting

consideration is limited to the Agreement's four corners as *Hill*

and *Cheek* instruct.[4] Accordingly, despite Ms. Rum's assertion

that there is an employee handbook or that there are other

documents that might contain language that could possibly render

the arbitration provision in the Agreement illusory, such

extrinsic evidence has no bearing on whether the Agreement

_____

[4] Moreover, the Agreement specifically disclaims any
reference to or reliance on outside documents. (*See* ECF No. 4-1
("This is the exclusive procedure for remedy for any dispute or
controversy covered. This is the entire understanding between
the Company and employee reg[]ardin[g] employment and reasons
for termination of employment. There is no contract concerning
employment between the Company and the Employee.")).

itself evidences sufficient consideration.   To that end, the
Agreement does impose mutual obligations on Ms. Rum and DARCARS.
Most notably, it requires that "*any* dispute or controversy
(including the question of whether the dispute or controversy is
subject to arbitration) . . . be submitted to, and determined
by, binding arbitration."   (ECF No. 4-1) (emphasis added).
"[M]utual promises to arbitrate act as an independently
enforceable contract[, i.e.,] each party has promised to
arbitrate disputes arising from an underlying contract, and each
promise provides consideration for the other."   *Cheek*, 378 Md.
at 153 (internal quotations and citations omitted); *see also*
*O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997)
("A mutual promise to arbitrate constitutes sufficient
consideration for [an] arbitration agreement.").   Because the
parties mutually agreed to be bound by the arbitration
provision, the Agreement was supported by adequate
consideration.

## IV.   Stay or Dismissal

When an issue in a judicial proceeding is referable to
arbitration, the FAA requires the court, upon the motion of a
party, to stay the proceedings until that issue is arbitrated.
9 U.S.C. § 3; *see Waffle House, Inc.*, 534 U.S. at 289.
"[D]ismissal is a proper remedy," however, "when all of the
issues presented in a lawsuit are arbitrable."   *Choice Hotels*

14

*Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).

Ms. Rum argues that if arbitration is compelled, the instant action should merely be stayed, not dismissed. (*See* ECF No. 9-1, at 5). She contends that Count Seven of the amended complaint, the breach of contract claim, is not covered by the Agreement. Though left unsaid, the inference appears to be that the matter should not be dismissed because Ms. Rum's claims are not all arbitrable.

Despite having held that "questions of arbitrability" are generally appropriate for courts, *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002), the Supreme Court has also held that the parties may agree to have an arbitrator determine issues of arbitrability if they "clearly and unmistakably provide" so, *see AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Here, questions of arbitrability are expressly within the purview of the Agreement. (*See* ECF No. 4-1 (applying to "any dispute or controversy *(including the question of whether the dispute or controversy is subject to arbitration)*" (emphasis added))). Thus, whether *any* of Ms. Rum's claims — including the breach of contract claim — are arbitrable is for the arbitrator to decide. Accordingly, it is not yet clear that "all of the issues presented in a lawsuit are arbitrable," *see Choice Hotels Int'l, Inc.*, 252 F.3d at 709–

10, and the court will stay the action rather than dismiss it while the arbitrator makes that determination.

**V.    Conclusion**

For the foregoing reasons, the motion to compel arbitration filed by Defendant DARCARS of New Carrollton, Inc., will be granted.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge