# **EXHIBIT**

## **2**





EXHIBIT ___2___

In Arbitration As Directed From the United States District Court for the District of Maryland (Greenbelt)

**The McCammon Group**

DISPUTE RESOLUTION
AND PREVENTION

Thomas E. Albro, Esq.
Hon. Michael C. Allen (Ret.)
Hon. Joanne F. Alper (Ret.)
Hon. J. Martin Bass (Ret.)
Donald T. Bucklin, Esq.
David A. Carney, Esq.
Hon. Dale R. Cathell (Ret.)
Hon. Jean W. Cunningham
Hon. Dennis W. Dohnal (Ret.)
John G. Douglass, Esq.
Hope B. Eastman, Esq.
Cheshire I'Anson Eveleigh, Esq.
Morton A. Faller, Esq.
Hon. Johanna L. Fitzpatrick (Ret.)
Hon. Jerome B. Friedman (Ret.)
Richard S. Glasser, Esq.
Robert J. Grey, Jr., Esq.
Hon. E. Preston Grissom (Ret.)
Robert T. Hall, Esq.
Grayson P. Hanes, Esq.
Michael E. Harman, Esq.
Susan Massie Hicks, Esq.
Barbara L. Hulburt, Esq.
Hon. Henry L. Jones, Jr. (Ret.)
John A. C. Keith, Esq.
Hon. Walter D. Kelley, Jr.
Hon. Donald H. Kent (Ret.)
Hon. Rufus G. King, III (Ret.)
Hon. Warren K. Kipp (Ret.)
Hon. Larry B. Kirksey (Ret.)
Hon. Stanley P. Klein (Ret.)
Hon. Lawrence L. Koontz, Jr. (Ret.)
Hon. Elizabeth B. Lacy (Ret.)
Stanton T. Lawrence, III, Esq.
Hon. William H. Ledbetter, Jr. (Ret.)
John H. Levin, Jr., Esq.
Hon. Cheryl M. Long (Ret.)
Edward B. Lowry, Esq.
V. Frederic Lyon, Esq.
John B. McCammon, Esq.
Patrick C. McKeever, Esq.
Hon. Michael P. McWeeny (Ret.)
Hon. Christine O.C. Miller (Ret.)
Robert T. Mitchell, Jr., Esq.
Alexia Morrison, Esq.
John H. O'Brion, Jr., Esq.
Hon. Barry R. Poretz (Ret.)
Hon. William C. Pryor (Ret.)
Mark E. Rubin, Esq.
Hon. James L. Ryan (Ret.)
Henry M. Sackett, III, Esq.
John E. Sandbower, III, Esq.
Hon. Thomas S. Shadrick (Ret.)
Hon. J. Frederick Sharer (Ret.)
Hon. Paul F. Sheridan (Ret.)
Hon. Thomas P. Smith (Ret.)
Senator Walter A. Stosch
Hon. James S. Sledge (Ret.)
Hon. F. Bradford Stillman (Ret.)
Hon. Diane M. Strickland (Ret.)
Hon. Alfred D. Swersky (Ret.)
Hon. Jay T. Swett (Ret.)
Kenneth L. Thompson, Esq.
Bruce E. Titus, Esq.
Daniel E. Toomey, Esq.
Guy K. Tower, Esq.
Hon. Kenneth E. Trabue (Ret.)
Hon. Glen A. Tyler (Ret.)
Hon. Arthur B. Vieregg (Ret.)
Robert P. Watkins, Esq.
Hon. Robert W. Wooldridge, Jr. (Ret.)
Hon. Juan Zeldon (Ret.)

Debra A. Rum

    Plaintiff

v.               Case No.  8:12CV-00366DKC

DARCARS of New Carrollton, Inc.

    Defendant

### Opinion and Decision

The trial in this matter took place on September 20, 2013 in the law office of McNamee Hosea Attorneys at Law in Greenbelt, Maryland.

Leo Carroll testified on behalf of the plaintiff. He owns an auto repair shop. He has employed Ms. Rum in the past and present. He has known her for about 24 years and described her as a tremendous employee. He paid her in cash anywhere between $50 and $100 a day.

John Figliozzi testified on behalf of the plaintiff. He is an auto technician and worked for DARCARS for 14 years, and knew Ms. Rum as a service writer. He testified that employees worked on their own cars after hours and that the manager Scott Stevenson knew about it. Sometimes there was an invoice and sometimes not. He testified that he worked on many employees' vehicles including the plaintiffs. He testified that management did not complain about work being done after hours. He was present at the meeting the day the plaintiff was fired. Only men were at the meeting and they were told the plaintiff was fired because a customer told management Ms. Rum told him that if he paid her in cash, he would save money and it would not be disclosed to DARCARS.

On cross examination, Mr. Figliozzi acknowledged that when he was employed he signed a form consenting to the rules of the company. He did not get a handbook. He knew that "inside work" was for employees only, not friends or family. At the meeting the day Ms. Rum was fired, there were no complaints about Ms. Rum's age and gender.

Anthony Johnson was called as a witness by Ms. Rum. He worked as a service advisor for about one year for DARCARS. He testified that

management approved of employees working on their cars after hours. DARCARS offered an employee discount, but all work had to be invoiced. He testified that he did not know of any work done after hours that had not been invoiced.

On cross examination, Mr. Johnson testified he started working for DARCARS in July 2010. He was fired by DARCARS. He did not work for DARCARS when Ms. Rum was there, but he does work with her now at a Toyota dealership and they are friends.

Nicole Rum, the plaintiff's daughter, testified that her mother was very upset after being fired, and it took a long time for her to look for and find a job.

The plaintiff, Debra Rum, testified. She is married and has three children in their twenties.

In 2008, she learned male service advisors had been hired at a pay rate higher than hers. She was the only woman service advisor. She brought the pay issue up to the management. She testified that within a couple of weeks, her salary was increased and made retroactive. She testified that Gary Higgins, the Operations Director, was not as cordial to her after her salary was increased than he was before.

On January 19, 2010, she was put on administrative leave after a meeting with Gary Higgins, Ellen Berg and Rose Bayat. She was told a potential customer had complained to management that Ms. Rum had offered to have his car worked on for cash to her at a price less than DARCARS would charge. Ms. Rum denied the allegation. But, she did admit on her own that she had in part permitted "after hours" work to be done on automobiles without the work being invoiced. She testified that all service advisors did it, and that the manager was aware of this work being done and not invoiced.

Ms. Rum was fired a few days after the meeting. She attempted to get unemployment compensation, but was unsuccessful at the hearing she attended by herself without representation. She also filed a complaint for discrimination because of her sex and age.

She obtained her current job on December 17, 2012 at a Toyota dealership. She testified she has been in the car business since age 15, and is the sole breadwinner in her home. She testified the termination of her job at DARCARS has been terrible for her and she is not as strong now as she was before.

On cross examination, she testified she still works part time for Leo Carroll, and is paid in cash, which she does not report as income.

She was shown and identified her signature on her job application, and employee manual, which she received. Ms. Rum acknowledged she permitted a neighbor, a friend and family to have service work done on their cars after hours at DARCARS, and that no invoice was created or payment made. She admitted service that was done on a truck in

her husband's name is really one of her friends, as well other non-family friends. She stated she compensated technicians for doing the work, but not DARCARS.

Since her firing from DARCARS, she has not seen a doctor or taken medicine to help her. When asked, she was not able to suggest any amount of compensation she wants from the defendant.

Ms. Rum agreed that at the January 19, 2010 meeting, age, gender and the pay wage complaint were not mentioned.

Ellen Berg testified for DARCARS. She has worked for DARCARS for 12 years and is the comptroller. Ms. Berg knows Ms. Rum, but does not manage service advisors or technicians.

Ms. Berg attended the meeting on January 19, 2010, which was prompted by a phone call from a customer to the owner of the company concerning an alleged cash transaction proposed by Ms. Rum. Ms. Rum denied making such a proposal. During the meeting, Ms. Rum admitted having service done on cars after hours for friends and family. Ms. Berg said the meeting lasted about an hour, and that Ms. Rum was fired for what she admitted doing, and not for the allegation made by a customer regarding a cash transaction.

Ms. Berg testified Ms. Rum denied the customer allegation, but that she admitted to allowing relatives and friends have service provided without invoice or compensation to DARCARS, but did provide small amounts of money, food and beer to technicians. Ms. Berg acknowledged that work can be done on vehicles of family for a discount, but the work had to be invoiced.

Ms. Berg identified Defense Exhibit 2 which states employees cannot be on dealership property after business hours. Ms. Berg testified service advisors do not have the authority to have service work done after the close of business. She stated that employees would have been fired if it had been known to management. Defendant's Exhibit 5 is an Employment at Will acknowledgement form signed by Ms. Rum on July 15, 2003.

Ms. Berg was present at the unemployment compensation hearing. DARCARS contested the ability of Ms. Rum to receive unemployment compensation.

Ms. Berg testified that Ms. Rum raised the issue of her salary in 2008. Her salary was changed to the same as the other service advisors and was provided back pay. This was done in 2008, about a year or so before Ms. Rum was terminated.

At the January 2010 meeting, Ms. Rum was asked to name the others she claimed provided "after hours" service, but she declined to provide names. No one else was asked.

On cross examination, Ms. Berg testified other employees have been fired for bad performance, and that there were no prior notices of "cheating" by any employees.

Rose Bayat, Vice President of Customer Relations at DARCARS, testified for the defendant. Ms. Bayat was involved in the pay raise matter, after learning Ms. Rum was being paid less than new employees. Ms. Rum's salary was increased and made retroactive. Ms. Bayat testified that the disparity was not due to age or gender. After the salary was increased, the issue was never raised again.

Ms. Bayat attended the January 2010 meeting with Ms. Rum. Ms. Rum admitted to bringing in cars for service, and that DARCARS was not paid. Ms. Rum stated she paid compensation to the technicians by giving them beer, pizza, etc.

Ms. Bayat recommended termination of Ms. Rum. She is not aware of any other employees who did what Ms. Rum did. She said service providers or service directors cannot change company policy.

Ms. Bayat said that discounts were available to employees and family, but not after business hours.

Gary Higgins testified for the defendant. He has been the Operations Director at DARCARS for the past seven years. Before, he was Assistant Service Director and he knew Ms. Rum. He was involved in the process to raise Ms. Rum's salary in 2008.

Mr. Higgins was at the January 2010 meeting and heard Ms. Rum state she had friends, family and neighbors bring their cars in for service after hours and that DARCARS was not paid for the service.

After Ms. Rum was terminated, he called a meeting with the employees and told them Ms. Rum was terminated for "side work". He did not ask any questions about side work being done by others.

The Arbitrator has considered the testimony, exhibits, arguments of counsel and closing statements, and makes the following findings.

The breach of contract count was dismissed without objection at the end of the trial on September 20, 2013.

The Plaintiff in her post-trial submission agreed to dismiss the punitive damages claim she alleged in her Amended Complaint.

The Plaintiff agreed to dismiss her claim for vicarious liability, since it is not a cause of action, but is a theory.

The Plaintiff agreed to dismiss her claim alleging violation of Prince George County code in her post-trial submission.

Count I of the Amended Complaint alleges intentional infliction of emotional distress. Basically, Ms. Rum alleges DARCARS intentionally and falsely accused her of violating DARCARS policy and that she suffered severe distress and loss of income.

There is evidence DARCARS and its employees handled Ms. Rum's termination in a courteous, professional manner without any animosity toward her. The DARCARS employees were good witnesses at the trial. Ms. Rum did not provide any evidence that she sought medical treatment for the severe distress she alleges she sustained.

Ms. Rum was unable to offer proof to support her claim for intentional infliction of emotional distress. Ms. Rum's claim in Count I of the Amended Complaint is Denied.

Count II of the Amended Complaint alleges multiple claims that will be treated separately.

Ms. Rum claims she was terminated based on her gender, age and disparity of compensation. She learned in November 2008 that newly hired male employees were making more salary than she was. She asked management about it and her salary was raised to that of the new employees and paid her retroactivity for what she had not been paid.

On July 29, 2011, Ms. Rum filed a claim against DARCARS with the EEOC. Her claim was time barred, since she was required to make such a claim in less than 300 days after she became aware of the alleged discriminatory disparity in compensation. Ms. Rum was discharged approximately 14 months after she complained to DARCARS about the disparity in income. There is no evidence that Ms. Rum was discharged because of the complaint she made in November 2008. The testimony of Rose Bayat is that after the salary of Ms. Rum was increased, the issue was never raised again.

Ms. Rum is seeking back pay as a result of her termination from DARCARS. She did not offer sufficient evidence of her efforts to mitigate her damages during her period of unemployment. Ms. Rum applied for jobs paying less than she made at DARCARS. She also worked for cash which she did not report. Her claim for back pay after termination is Denied.

Ms. Rum claims she was terminated based on her gender and age. The evidence she presented does not support these claims. Ms. Rum was terminated for violated company policy. In addition, the DARCARS representatives who terminated her included Ellen Berg and Rose Bayat, who are approximately Ms. Rum's age and gender.

Ms. Rum violated DARCARS policy by allowing family, friends and neighbors to have their automobiles serviced at DARCARS after hours without compensating DARCARS for the services performed. This conduct by Ms. Rum was clearly not what DARCARS expected of her. Ms. Rum was provided a list of company polices, which she agreed to obey. Ms. Rum violated the company policy she agreed to obey. Ms. Rum

claimed other employees did what she did, but she did not identify them, and none were identified by DARCARS.

Ms. Rum, at the time of her employment, signed the Employment at Will and Arbitration form (Defense Exhibit 3), the Employee Manual (Defense Exhibit 4) and the Employee Acknowledgment Form (Defense Exhibit 5).

On page 11 of the DARCARS Employment Manual, which Ms. Rum signed, it states in the last sentence of the last paragraph in Section 104 – Business Ethics and Conduct, "Using DARCARS time, property or facilities for reasons not directly related to DARCARS' business, or removing or borrowing DARCARS property without permission, is strictly prohibited."

Ms. Rum, when testifying, appeared to be a very nice person and her witnesses were helpful to her.

The defendant's witnesses were very good, especially the testimony of Ellen Berg and Rose Bayat, whose testimony was more believable and reliable than the testimony of Mr. Rum and her witnesses.

This litigation was very professional on both sides, and many issues and causes of action were asserted and defended.

In the end, the decision was clear. Ms. Rum was terminated because she broke the rules of DARCARS, and for no other reason.

Accordingly, it is the 18th day of October 2013, ordered that all Plaintiff's claims is denied and Judgment is entered for the Defendant on all issues.

It is hereby ordered that 75% of the Arbitrator's fees is to be paid by the Defendant and 25% paid by the Plaintiff.

James L. Ryan
James L. Ryan
Arbitrator